# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN GNUTEK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 808 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| ILLINOIS GAMING BOARD; MARK OSTROWSKI; | ) | |
| KAREN WEATHERS; ISAIAH D. VEGA, | ) | |
| VINCENT PATTARA; and CLINTON C. COBB, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Gnutek alleges that Defendants retaliated against him by suspending him and then terminating his employment as a Special Revenue Agent for the Illinois Gaming Board ("IGB"),[1] in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Count I), the First Amendment of the United States Constitution (Count II), and the Whistle Blower Protection of the Illinois State Officials and Employees Ethics Act (the "Ethics Act"), 5 ILCS 430/15-10 *et seq.* (Count III). The IGB and Mark Ostrowski, Karen Weathers, Isaiah D. Vega, Vincent Pattara, and Clinton C. Cobb (the "Individual Defendants"), have filed a motion to dismiss, R. 16. Defendants' motion is granted in part and denied in part as follows.

---

[1] Gnutek alleges that as a Special Revenue Agent his employer initially was the Illinois Department of Revenue, but that, at some point, the State reclassified him as an employee of the IGB. R. 1 at 3 n.1.

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g.,*
*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th
Cir. 2009). A complaint must provide "a short and plain statement of the claim
showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to
provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp.*
*v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels
and conclusions, and a formulaic recitation of the elements of a cause of action will
not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged.'"
*Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In
applying this standard, the court must accept all well-pleaded facts as true and
draw all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at
877.

**DISCUSSION**

**A.    RETALIATION CLAIM AGAINST THE IGB (COUNT I)**

Count I of the complaint alleges a claim against the IGB for retaliation under Title VII. The IGB argues that Count I should be dismissed as implausible because of the purported nine year period between the alleged protected activity (the filing of past lawsuits against the IGB and other state officials) and the alleged retaliatory conduct (the suspension and ultimate termination of Gnutek's employment with the IGB).

The Seventh Circuit has "said consistently and repeatedly in retaliation cases stretching back more than a decade[ ] [that] a long time interval between protected activity and adverse employment action may weaken *but does not conclusively bar* an inference of retaliation." *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014) (emphasis added) (citing cases). "[I]f the time interval standing alone is long enough to weaken an inference of retaliation, the plaintiff is entitled to rely on other circumstantial evidence to support h[is] claim." *Id.* For purposes of a motion to dismiss, moreover, the plaintiff is not required to *allege* this additional circumstantial evidence so long as the facts alleged are sufficient to make the plaintiff's retaliation claim plausible. *See Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 827 (7th Cir. 2014) (noting that the district court applied the wrong standard on a motion to dismiss when it "faulted [the plaintiff] for not providing 'evidence' in support of her [retaliation] claims" and when it "relied on summary judgment

decisions that addressed not the content of complaints but the evidence needed to take a claim to a jury").

The IGB is correct that the Seventh Circuit has said that dismissal under Rule 12(b)(6) may be appropriate where an alleged retaliation claim is "so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Id.* at 828 ("If the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed."). But the Seventh Circuit also explained that "no bright-line timing rule can be used to decide whether a retaliation claim is plausible," and that "[a] mechanistically applied time frame would ill serve [a court's] obligation to be faithful to the legislative purpose of Title VII." *Id.* at 828 (internal quotation marks and citation omitted). Thus, in the usual case, "[t]he facts and circumstances . . . must be evaluated to determine whether an interval is too long to permit a jury to determine rationally that an adverse employment action is linked to an employee's earlier complaint." *Id.* (internal quotation marks and citation omitted).

Here, Gnutek has alleged a history of acrimonious litigation between the parties, involving both state and federal lawsuits and at least one appeal to the Seventh Circuit, and Gnutek's allegations "must be viewed through that lens." *Id.* This litigation history adds plausibility to Gnutek's retaliation claim, as a rational factfinder might conclude that the IGB had a long memory and was merely waiting

for the right time to drop the ax on Gnutek. The IGB cites *Carmody v. Board of Trustees of the University of Illinois*, 747 F.3d 470 (7th Cir. 2014), as an example of a retaliation case where dismissal at the pleading stage was found to be appropriate. But in *Carmody*, the plaintiff alleged he was fired for reporting "that two professors were using a popcorn machine on university property as part of 'a private consulting deal' of some sort. . . . [The plaintiff's] only reason for believing that his report about the popcorn led to his firing seem[ed] to be that the popcorn incident occurred and then later he was fired." *Id.* at 480. The Seventh Circuit agreed with the district court's assessment that "the three years separating the popcorn incident and his firing made his claim implausible . . . , at least where [the plaintiff] ha[d] given [the court] no potential explanation for the long delay between his report and the alleged retaliation." *Id.* The litigation history between the parties alleged in this case—involving allegations of misconduct made by Gnutek against state employees at the highest level of government, including former Illinois Governor Rod Blagojevich's Chief of Staff and campaign manager and the Executive Director of the Illinois Asphalt Pavement Association (who raised a significant amount of money for Blagojevich), both of whom were indicted by a federal grand jury in April 2009 with Blagojevich, *see Gnutek v. Ill. Gaming Bd.,* No. 08 C 5516, 2011 WL 1231158, at 3 & n.5 (N.D. Ill. Mar. 30, 2011), *rev'd sub nom., Hobgood v. Ill. Gaming Bd.,* 731 F.3d 635 (7th Cir. 2013)—is not comparable in the slightest to the popcorn incident at issue in *Carmody*.

The IGB argues in its reply brief that the parties' past litigation history does not add plausibility to Gnutek's allegations because Gnutek does not allege "an ongoing pattern of retaliatory behavior." R. 20 at 2 (pointing out that Gnutek has not alleged any facts to suggest that the IGB engaged in any retaliatory conduct against him since the filing of the past litigation more than nine years ago). But the IGB's attempt to force Gnutek's allegations into a single artificial box labeled "on-going pattern of retaliatory behavior" fails. Although such an on-going pattern is one factor, if it exists, to consider where the protected activity and the final adverse action are separated by a long time period, it is not the only factor that can add plausibility to a plaintiff's retaliation claim in such a situation.

To begin with, Gnutek very well may have experienced on-going retaliatory conduct and simply did not include that fact in his complaint; as noted, Gnutek was not required to plead every fact that might support his claims. But even if the Court were to infer from the absence of such an allegation that the IGB did not engage in any on-going retaliatory behavior, as a matter of logic, "just because a supervisor did not discriminate or retaliate against an individual at one point in time does not mean that later discrimination or retaliation is foreclosed." *Benjamin v. Ill. Dep't of Fin. & Prof'l Regulation*, 837 F. Supp. 2d 840, 849 n.7 (N.D. Ill. 2011). Indeed, the facts alleged in the complaint render it plausible that Gnutek's firing was retaliatory notwithstanding that the IGB may have refrained from retaliation in the intervening years. Specifically, Gnutek alleges a "continued pattern of hostility with the IGB," R. 19 at 5; in other words, Gnutek alleges that there is bad blood between

the parties stemming from their past history. A review of the facts alleged by Gnutek in the past litigation makes Gnutek's allegation of bad blood and delayed retaliation plausible. *See, e.g., Gnutek,* 2011 WL 1231158, at *1-7. Indeed, in an appeal taken during that litigation, the Seventh Circuit described the evidence as "easily support[ing] a reasonable inference that [the appellant] was the victim of a *retaliatory witch hunt.*" *Hobgood,* 731 F.3d at 644 (emphasis added).

The IGB attempts to discount the Seventh Circuit's reference to a "witch hunt" because it was made in reference to the evidence supporting the retaliation claims of Gnutek's co-plaintiff in the prior federal litigation (Hobgood), who was a fellow IGB employee accused of violating the law by rendering aid to Gnutek's alleged whistle-blowing activities. But while Gnutek was not a party to his co-plaintiff's appeal, the facts recited by the Seventh Circuit in resolving that appeal involved Gnutek. It is not much of a stretch to conclude that any "witch hunt" directed at Gnutek's co-plaintiff might have been directed at Gnutek as well. The Seventh Circuit's comment on the co-plaintiff's evidence, therefore, adds to the plausibility of Gnutek's claims here.

The Seventh Circuit's reference to a "witch hunt," as well as the facts described by the district court in its prior decisions in the same case, suggest a significant, difficult, and acrimonious history between Gnutek and his employer. By failing to acknowledge the serious charges and acrimonious nature of the prior litigation, the IGB suggests that the parties' past relationship was fairly innocuous, involving a situation roughly equivalent to the popcorn machine incident in

*Carmody*. Such a comparison is ludicrous. Moreover, the Court need not, and indeed should not, accept the IGB's portrayal of the facts over Gnutek's. At this stage of the proceedings, the Court must indulge ever reasonable inference in favor of Gnutek, keeping in mind that the issue under Rule 12(b)(6) is not whether the IGB in fact retaliated against Gnutek but whether it is plausible that the IGB could have retaliated against Gnutek.

Finally, even if the Court were to credit the IGB's argument that a retaliatory motive for Gnutek's suspension and termination is rendered implausible by the absence of allegations regarding retaliatory conduct in the lengthy time period between when Gnutek filed the first federal lawsuit and when he filed the present lawsuit, the allegations do not conclusively show that the time period in question is, as the IGB argues, at least nine years. The IGB ignores the fact that the federal litigation in question was on-going through at least May 20, 2014. *See Hobgood v. Ill. Gaming Bd.,* No. 08 C 5516, Dkt. # 216 (N.D. Ill) (dismissing case with prejudice). Although Gnutek was dismissed as a plaintiff in that litigation as of February 17, 2012, it is at least plausible that the IGB would refrain from taking any further retaliatory conduct against Gnutek until the entire case was disposed of, in which case a reasonable factfinder could conclude that the time period between the alleged protected activity and the alleged retaliatory conduct was closer to nine *months*[2] rather than the nine *years* cited by the IGB. Accordingly, for

---

[2] Gnutek alleges he was suspended on February 3, 2015 (R. 1, ¶ 27) and terminated on February 27, 2015 (*id.,* ¶ 28), which is approximately nine months after the previous federal litigation was dismissed.

this, as well as all of the other reasons already discussed, the Court concludes that Gnutek's Title VII retaliation claim against the IGB is plausible and survives Rule 12(b)(6).

## B. RETALIATION CLAIM AGAINST THE INDIVIDUAL DEFENDANTS (COUNT II)

The Individual Defendants, who are named in their individual capacities in Count II of the complaint, argue that those claims should be dismissed because the complaint's allegations do not show in what specific way each Individual Defendant was "involved" in the decision to suspend and then terminate Gnutek.

The Individual Defendants may be held liable under 42 U.S.C. § 1983 if they retaliated against Gnutek in violation of the First Amendment. The Individual Defendants are correct that, in the context of a Rule 12(b)(6) motion, a plaintiff alleging a § 1983 claim for a constitutional violation must allege enough facts to show that the defendant was personally involved in the constitutional deprivation in question. *See Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993) ("a valid § 1983 claim for damages against a state supervisory official in his individual capacity requires a showing of direct responsibility for the improper action. In other words, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.") (internal quotation marks and citations omitted). But Gnutek alleges that all of the Individual Defendants participated in the decision to suspend and then terminate him. R. 1,¶ 42. It would seem, therefore, that Gnutek has alleged the requisite personal involvement.

The Individual Defendants' argument, however, apparently is that pleading personal involvement through an allegation of participation in the adverse employment action at issue is insufficient, and that a plaintiff must plead specific facts regarding the *nature* of the alleged participation rendering the allegation of personal involvement plausible. Gnutek acknowledges that the complaint "does not go into specifics on the role that each of [the Individual Defendants] played," and argues that if the allegation that all were "involved in the critical decisions" is not sufficient, than the Court should allow [him] to file an amended complaint to provide greater factual background. R. 19 at 7. But the Court concludes that delay in these proceedings to allow time for Gnutek to file an amended complaint is unnecessary.

To begin with, the Individual Defendants do not cite any case law to support their argument that further factual details regarding the nature of the personal involvement are required.[3] Accordingly, the Court finds that the Individual Defendants have waived this argument. *See Davis v. Carter,* 452 F.3d 686, 691-92

---

[3] "Case law is more than window dressing." *Schmude v. Sheahan*, 2004 WL 887387, at *3 (N.D. Ill. Apr. 23, 2004). While "it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel," *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996), the Court notes at least one case, not cited by the parties, that is contrary to the Individual Defendants' argument here. *See Jones v. Sabis Educ. Sys., Inc.,* 52 F. Supp. 2d 868, 877 (N.D. Ill. 1999) (holding that language of complaint "falls short of alleging personal involvement" against certain defendants who were alleged only to have "'joined in support' of plaintiff's termination," while finding sufficient allegations against other defendants who were alleged to have been "'personally involved' or to have 'participated' in the actual discrimination against plaintiff").

(7th Cir. 2006) ("perfunctory and undeveloped arguments, that are not supported by pertinent authority, are waived").

In any event, Gnutek alleges the job title of each of the named Individual Defendants (R. 1, ¶¶ 7-11), and also alleges that four of the Individual Defendants were in his supervisory chain of command (*id.,* ¶ 41), while the remaining Individual Defendant was an EEO Officer (*id.,* ¶ 8). While this information is neither extensive nor detailed in terms of describing the role each of the Individual Defendants may have played in Gnutek's termination, it does show a plausible connection between the decision to terminate Gnutek and each Individual Defendant, while also giving the Individual Defendants fair notice of why Gnutek seeks to hold them personally responsible for his termination. *See E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 779 (7th Cir. 2007) ("Rule 8(a)(2)'s 'short and plain statement of the claim' must contain a minimal level of factual detail, although that level is indeed very minimal. The classic verbal formula is that a complaint need only be sufficiently detailed to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Twombly,* 550 U.S. at 555 n. 3 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (alteration in *Twombly*))). Additional facts regarding the specific role each of the Individual Defendants played in the decision to suspend and terminate Gnutek's employment may be developed through discovery. *See, e.g., Hildebrandt v. Ill. Dep't of Natural Res.,* 347 F.3d 1014, 1040 (7th Cir. 2003) (personal involvement question resolved at summary judgment stage); *Brahos v. Brown,* 2002 WL 31870544, at *2 (N.D. Ill.

Dec. 20, 2002) (granting summary judgment where the evidence showed that two defendants "were not personally involved in the decision to terminate plaintiffs"), *aff'd*, 79 Fed. App'x 196 (7th Cir. 2003). In short, the Court concludes that Gnutek has adequately alleged a plausible factual basis to support his allegation of personal participation by each Individual Defendant.

## C. ETHICS ACT CLAIM (COUNT III)

Count III purports to state a claim against the IGB and the Individual Defendants under the Whistle Blower Protection portion of the Ethics Act, which provides as follows:

> An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee does any of the following:
>
> (1) Discloses or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of a law, rule, or regulation by any officer, member, State agency, or other State employee.
>
> (3) Assists or participates in a proceeding to enforce the provisions of this Act.

5 ILCS 430/15-10.

### 1. THE IGB

The IGB argues that Gnutek's claim against it under the Ethics Act is barred by the Eleventh Amendment. The IGB is a five-member board that regulates all gambling activity in Illinois under the Illinois Riverboat Gambling Act, 230 ILCS

10/1 *et seq.* *See* R. 1, ¶ 6. It appears therefore to be a state agency. For purposes of the Eleventh Amendment, a suit against a state agency is the equivalent of a suit against the state. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). In general, a state is immune from suit in federal court unless the state, by unequivocal language, waives the protections of the Eleventh Amendment or Congress unequivocally abrogates the state's Eleventh Amendment immunity. *Id.* Illinois has waived its sovereign immunity to suit under the Ethics Act in its own courts. *See* 5 ILCS 430/15-25 (providing that "[t]he circuit courts of this State shall have jurisdiction to hear cases brought under this Article"); 745 ILCS 5/1 (stating that "the State of Illinois shall not be made a defendant or party in any court" *with the exception of*, among others, suits brought under "the State Officials and Employees Ethics Act"); *Crowley v. Watson*, No. 1–14–2847, 2016 IL App (1st) 142847, ¶ 48, 51 N.E.3d 69, 81 (Ill. App. 1st Dist. Mar. 2, 2016) (noting that the Illinois Immunity Act "was amended so that the state could be made a defendant in actions involving a violation of the Ethics Act," which "constitutes a clear and unequivocal waiver of sovereign immunity by the State for Ethics Act violations"), *appeal denied*, 50 N.E.3d 1139 (Ill. 2016).

But "a state can waive its sovereign immunity to suit in its own courts without thereby being deemed to have waived its Eleventh Amendment immunity to suit in federal court." *Osteen v. Henley*, 13 F.3d 221, 224 (7th Cir. 1993); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) ("A State's constitutional interest in immunity encompasses not merely *whether* it may be

sued, but *where* it may be sued.") (emphasis in original); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Thiel v. State Bar of Wis.*, 94 F.3d 399, 403 (7th Cir. 1996). That is what the State of Illinois has done here.[4] Accordingly, it would appear that Gnutek's claim under the Ethics Act against the IGB is barred. *See Benjamin*, 837 F. Supp. 2d at 851-52 (holding that the Illinois Department of Financial and Professional Regulation has Eleventh Amendment immunity to claims brought under the Ethics Act) (citing *Block v. Ill. Sec'y of State*, 2010 WL 706043, at *3 (S.D. Ill. Feb. 24, 2010)).

Gnutek appears to concede that his claim in Count III against the IGB is barred by the Eleventh Amendment but argues that he has named two of the Individual Defendants in their official capacities and that official capacity claims for injunctive relief are not similarly barred. A state employee sued in his or her official capacity is treated the same as the state where money damages are sought. *Kroll,* 934 F.2d at 907-08 ("official-capacity suits for retrospective relief—*i.e.*, money damages payable from the state treasury—generally implicate the eleventh amendment in the absence of a waiver by the state or a valid congressional override."). "Under an exception to the general rule, however, official-capacity actions may not be barred by the eleventh amendment insofar as they request

---

[4] There is no suggestion that Congress unequivocally abrogated the state's sovereign immunity with respect to the state law claims at issue. In contrast, "Congress validly abrogated the States' Eleventh Amendment immunity in passing the 1972 Act [extending Title VII's coverage to the States]." *Nanda v. Bd. of Trs. of Univ. of Ill.*, 303 F.3d 817, 831 (7th Cir. 2002); *see Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Accordingly, the IGB is not protected by sovereign immunity with respect to Count I of the complaint.

prospective relief—*i.e.,* an injunction or a declaratory judgment and monetary damages that are 'ancillary' to either." *Id.* at 908. This exception, based on *Ex parte Young*, 209 U.S. 123, 160 (1908), and *Edelman v. Jordan*, 514 U.S. 651, 673 (1974), has been justified by the perceived need "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp.,* 465 U.S. at 105 (quoting *Ex parte Young*).

Gnutek points out that the complaint alleges that two of the Individual Defendants (Ostrowski and Cobb) are named in their official capacities "for the limited purpose of implementing equitable relief." R. 1, ¶¶ 7, 11. Insofar as Gnutek's official capacity claims against these two Individual Defendants in Count II are concerned, Gnutek is correct that those claims survive the motion to dismiss because the claim alleged in Count II is for a violation of Gnutek's constitutional rights. Pursuant to the Supreme Court's discussion in *Pennhurst,* Gnutek may seek injunctive relief against the officials involved in the alleged unconstitutional conduct. But with respect to Gnutek's state law claims under the Ethics Act in Count III, the exception to Eleventh Amendment immunity does not apply because no federal interest is involved. As the Supreme Court explained,

> the need to reconcile competing interests is wholly absent
> . . . when a plaintiff alleges that a state official has
> violated *state* law. In such a case the entire basis for the
> doctrine of *Young* and *Edelman* disappears. A federal
> court's grant of relief against state officials on the basis of
> state law, whether prospective or retroactive, does not
> vindicate the supreme authority of federal law. On the
> contrary, it is difficult to think of a greater intrusion on

15

> state sovereignty than when a federal court instructs
> state officials on how to conform their conduct to state
> law. Such a result conflicts directly with the principles of
> federalism that underlie the Eleventh Amendment.

*Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 (emphasis in original). In short, "*Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law." *Id.*

Gnutek points out that the district court in *Benjamin* reached a different result. *See* 837 F. Supp. 2d at 852 ("Because the Eleventh Amendment does not foreclose claims for injunctive relief (and plaintiff requests injunctive relief here), plaintiff's Ethics Act claims based on plaintiff's request for injunctive relief survive against IDFPR and Martinez (in his official capacity)."). The *Benjamin* court, however, does not discuss *Pennhurst*, and, its ruling in this regard cannot be reconciled with the Supreme Court's holding in that case. Gnutek also cites to *Kashani v. Purdue University*, 813 F.2d 843 (7th Cir. 1987), but that case involved a federal constitutional, not state law, claim. In sum, Gnutek's claim in Count III against the IGB or any of the Individual Defendants in their official capacities, whether seeking damages or injunctive relief, is barred by the Eleventh Amendment and must be dismissed.

### 2. THE INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Finally, the Court considers Gnutek's state law claim under the Ethics Act against the Individual Defendants in their individual capacity. The Individual Defendants argue that Gnutek's claims against them under the Ethics Act should be dismissed because the Illinois Legislature did not intend to impose individual

liability for violations of the Ethics Act. The problem with this argument is that the Individual Defendants are unable to cite any case law to support it. As the Individual Defendants acknowledge, the only court to directly consider the issue of individual liability under the Ethics Act ruled against the Individual Defendants' position. *See Maes v. Folberg*, 504 F. Supp. 2d 339, 350 (N.D. Ill. 2007).[5]

The Individual Defendants argue that *Maes* is unpersuasive because the court acknowledged that, "[w]ithout any guidance from the Illinois courts on the Ethics Act, [it] [was] flying a bit blind," and that "[t]he sole case citing the whistleblowing provision of the Ethics Act [the *Combs–Hartshorn* case cited in note 5], sheds little light" because "the question of whether the Ethics Act claim could be instituted against an individual, rather than solely a government entity" was not specifically addressed. *Id.* But the *Maes* court nevertheless went on to analyze the issue and concluded that individual liability was contemplated by the statute. The Individual Defendants further argue that the *Maes* court later reversed itself on the question of individual liability under the Ethics Act, but they do not provide a citation to support that contention. The Court's own review of the docket in the

---

[5] Several other courts appear to assume, without deciding, that state employees may be held individually liable under the Ethics Act. *See Novick v. Staggers*, 2012 WL 2325661, at *8 (N.D. Ill. June 19, 2012) (holding that damages claims against individual defendants under Ethics Act were not barred by the state's sovereign immunity, but noting that any judgment against those individuals would have to come out of their pockets rather than the state treasury); *Combs-Harshorn v. Budz*, 2007 WL 844582 (N.D. Ill. 2007) (allowing Ethics Act claim to proceed against the individuals without expressly considering the issue); *Crowley*, 2016 Ill App. (1st) 142847, ¶ 48, 51 N.E.3d at 82 (upholding a jury verdict under the Ethics Act against a state employee and the state university which employed him, which included both an award of back pay and an award of punitive damages).

*Maes* case indicates that, while the defendants in that case filed a motion to reconsider the individual liability issue, the court never ruled on it and the case ultimately was voluntarily dismissed by the plaintiff.

As explained by the Seventh Circuit,

> [b]ecause resolution of th[is] issue[ ] . . . depends on [Illinois] law, [the court] must apply the law that would be applied in this context by the [Illinois] Supreme Court. If the [Illinois] Supreme Court has not spoken on the issue, [the court] generally treat[s] decisions by the state's intermediate appellate courts as authoritative unless there is a compelling reason to doubt that [those] courts have got the law right. When [the court is] faced with two opposing and equally plausible interpretations of state law, [the court will] generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability.

*Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000) (internal quotation marks and citations omitted).

While no Illinois case law directly confronts the question of individual liability under the Ethics Act, the Illinois Appellate Court in *Crowley* upheld a jury verdict under the Ethics Act against a state employee that included an award of punitive damages. The court did not say whether the employee was jointly and individually liable for the punitive damages award along with the state,[6] but in upholding that award, the court stated somewhat cryptically (in the context of noting that the state had waived sovereign immunity for claims under the Ethics Act) that "the Ethics Act makes no distinction between individual versus state

---

[6] The jury verdict also included an award of back pay, for which only the state could be liable.

liability or the damages that ensue for a violation of the Ethics Act." *Crowley,* 2016 Ill App. (1st) 142847, ¶ 48, 51 N.E.3d at 82. The statement appears to have been made in furtherance of the court's ruling that the Ethics Act's allowance of an award of double back pay for violations did not render an award of punitive damages inappropriate. The court justified the allowance of both remedies by noting that the statute expressly provides a choice of remedies and that circumstances may exist in any given case where only one of the two remedies is available to the plaintiff. In line with this reasoning, the court's statement about individual versus state liability would seem to suggest that the court was acknowledging that the Ethics Act allowed for either or both.

Apart from the above authority, the language of the Ethics Act itself certainly suggests that the state legislature intended for there to be individual liability for public employees who commit violations of the Act. The Ethics Act's prohibition expressly extends to conduct not only of a "State agency," but of "a State employee" as well.[7] The Individual Defendants argue, however, that the remedies provision of the whistle blower protection part of the Ethics Act includes remedies such as reinstatement and back pay that are only available from the state itself:

> The State employee may be awarded all remedies necessary to make the State employee whole and to prevent future violations of this Article. . . . Remedies imposed by the court may include, but are not limited to, all of the following: (1) reinstatement of the employee to either the same position held before the retaliatory action or to an equivalent position; (2) 2 times the amount of

---

[7] *See* 5 ILCS 430/15-10 ("An officer, a member, *a State employee*, or a State agency shall not take any retaliatory action . . . .") (emphasis added).

> back pay; (3) interest on the back pay; (4) the reinstatement of full fringe benefits and seniority rights; and (5) the payment of reasonable costs and attorneys' fees.

5 ILCS 430/15-25. The Individual Defendants then go on to make a legislative history argument based on this provision. While it is not entirely clear what that argument is, the Individual Defendants appear to be saying that the prohibition language in § 15-10 originally omitted state employees from its coverage, which supposedly explains why the remedies language in § 15-25 specifically mentions only reinstatement and back pay, two remedies that can only come from the state.[8] The Individual Defendants argue that the reason the state legislature added state employees to § 15-10 was not to impose individual liability for violations of the whistleblower protection but to give the state a basis for imposing sanctions against a state employee under § 50-5 of the Ethics Act. Section 50-5 provides that a person who intentionally violates the whistle blower provision of the Act (Article 15) is guilty of a Class A misdemeanor, and, in addition to any other penalty that may apply, whether criminal or civil, "may be subject to discipline or discharge by the appropriate ultimate jurisdictional authority." 5 ILCS 430/50-5(a) and (f). Insofar as the civil remedies for a violation of the whistle blowing protection of the Ethics Act

---

[8] *See* R. 17 at 11 ("[W]hen originally contemplated as House Bill 3412, which upon passage became Public Act 093-0615, the whistleblower provisions of Section 15-10 related only to retaliatory actions against state employees that were committed by '[a]n [executive or legislative branch constitutional] officer, a member [of the General Assembly], or a State agency[.]' Pub. Act 93-0615. Although a state employee could suffer a retaliatory act, as originally worded, a state employee could not subject another state employee to the same. Accordingly, there was no ambiguity as to the intent to hold the state agency responsible for compensating an aggrieved person via the remedies found in Section 15-25.").

are concerned (§ 15-25), the Individual Defendants contend that the only effect of adding state employees to § 15-10 is to facilitate a court awarding remedies for a state employee's violations *against the state agency*.

The Individual Defendants offer a theory concerning legislative intent that may be plausible but is not supported with citation to any actual authority demonstrating that legislative intent. Accordingly, the Court must construe the language of the relevant statutory provisions without reference to legislative intent as reflected in legislative history. In doing so, the Court will apply the principles of statutory construction that an Illinois court would apply, pursuant to which the court's

> primary objective . . . is to ascertain and effectuate the intent of the legislature … by applying the plain and ordinary meaning of the statutory language. When construing statutory language, [an Illinois court will] view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. In addition, a court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another.

*Crowley,* 2016 IL App (1st) 142847, ¶ 44, 51 N.E.3d at 80. The plain and ordinary meaning of the statutory language suggest that individual liability against a state employee was intended. Moreover, while the Seventh Circuit has said that when in doubt, construe the statute narrowly to restrict liability, *Home Valu, Inc.* 213 F.3d at 963, in this case individual liability appears to be consistent with the stated purpose of the remedies provision of the statute, which is to award an injured employee "all remedies necessary to make the State employee whole and to prevent

future violations of this Article." 5 ILCS 430/15-25; *see, e.g., Maes*, 504 F. Supp. 2d at 349 (holding that the phrase used in the remedies provision of the Act—"including but not limited to"—suggested breadth rather than limitation on remedies). The Individual Defendants' argument essentially relies on a restrictive reading of the statute when the statutory language suggests an expansive one. *See Crowley*, 2016 IL App (1st) 142847, ¶ 49, 51 N.E.3d at 82 (holding that an expansive interpretation of the remedies provision to include both double back pay and punitive damages was "consistent with the policy and purpose of the Ethics Act"). As the court stated in *Crowley,* the actions of a whistle blower plaintiff

> protect[ ] the public's right to know of inappropriate [governmental] activities . . . . Indeed, [k]eeping government efficient and honest depends on the vigilance of those most involved in its day-to-day operations, its employees. Those employees, however, are unlikely to step forward and speak out unless they are assured that they will not be the target of retribution by their coworkers and superiors.

*Id.* (internal quotation marks and citations omitted).

In short, the expansive language in the statute regarding making the injured employee whole, the policies and problems sought to be remedied by the statute, and the reasoning of the Illinois Appellate Court in *Crowley* in upholding an award of punitive damages under the Act, collectively outweigh the listing of employer-centric remedies in § 15-25 of the Act and the absence of any specific direction in the statute permitting individual liability. To the extent that any legislative intent can be inferred from the addition of "State employee" to § 15-10, the Court must conclude, contrary to the Individual Defendants' argument, that the state

legislature intended by that addition to make state employees subject to personal liability under the Act.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, R. 16, is (1) granted as to Gnutek's claims in Count III against the IGB and Individual Defendants in their official capacities, and (2) denied in all other respects.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 21, 2017